THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
JASPER DIVISION

| | |
|---|---|
| **KEITH BURRELL SELF**, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action Number |
| | ) 6:17-cv-01482-AKK |
| **SOCIAL SECURITY** | ) |
| **ADMINISTRATION,** | ) |
| **COMMISSIONER**, | ) |
| | ) |
| Defendant. | ) |

## **MEMORANDUM OPINION**

Keith Burrell Self brings this action pursuant to Section 405(g) of the Social Security Act, 42 U.S.C. § 405(g), seeking review of the Administrative Law Judge's denial of disability insurance benefits, which has become the final decision of the Commissioner of the Social Security Administration ("SSA"). For the reasons explained below, the court reverses and remands for further consideration.

### I. Procedural History

Self worked as an assembly line inspector, door assembler, and metal furniture assembler until his alleged disability in December 2014. Docs. 7-3 at 53; 7-6 at 2. Self filed his application for Disability Insurance Benefits ("DIB") roughly a month later, doc. 7-6 at 2, asserting a disability onset beginning on

December 3, 2014 due to obesity, degenerative disc disease, and degenerative joint disease. Doc. 7-3 at 20. After the SSA denied his application, Self requested a formal hearing before an ALJ. Docs. 7-4 at 13; 7-5 at 4-16. Ultimately, the ALJ found that Self was not disabled. Doc. 7-3 at 14. The Appeals Counsel affirmed, rendering the ALJ's decision the final decision of the Commissioner. *Id.* at 2. Self filed this appeal pursuant to 42 U.S.C. §§ 1383(c)(3) and 405(g). Doc. 9.

## II. Standard of Review

First, federal district courts review the SSA's findings of fact under the "substantial evidence" standard of review. 42 U.S.C. §§ 405(g), 1383(c); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is "reasonable and supported by substantial evidence." *See Martin*, 894 F2d at 1529 (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)). Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* (internal citations omitted). If supported by substantial evidence, the court must affirm the Commissioner's factual findings, even if the evidence preponderates against the Commissioner. *Id.*

Credibility determinations are the province of the ALJ. *Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005). However, "[t]he testimony of a treating physician must ordinarily be given substantial or considerable weight unless good cause is shown to the contrary," and the failure of the Secretary "to specify what weight is given to a treating physician's opinion and any reason for giving it no weight" constitutes reversible error. *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986). Courts have found good cause to discount a treating physician's report when it is "not accompanied by objective medical evidence, . . . wholly conclusory," or "inconsistent with [the physician's] own medical records." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997); *Edwards v. Sullivan*, 937 F.2d 580, 583 (11th Cir. 1991). In contrast to the opinion of a treating physician, "the opinion of a nonexamining physician is entitled to little weight if it is contrary to the opinion of the claimant's treating physician." *Broughton v. Heckler*, 776 F.2d 960, 962 (11th Cir. 1985).

Second, federal courts review the SSA's conclusions of law de novo, *see Bridges v. Bowen,* 815 F.2d 622, 624 (11th Cir.1987), and "[f]ailure to apply the correct legal standards is grounds not for remand but, for reversal." *Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988). No presumption attaches to either the ALJ's choice of legal standard or to the ALJ's application of the correct legal standard to the facts. *Id.*

Finally, reviewing courts have the power "to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g) (emphasis added).

### III. Statutory and Regulatory Framework

An individual applying for DIB bears the burden of proving that she is disabled. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). To qualify, a claimant must show "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(i)(I)(A). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

Determination of disability under the Act requires a five step analysis. 20 C.F.R. § 404.1520. Specifically, the Commissioner must determine, in sequence:

(1) whether the claimant is doing substantial gainful activity;
(2) whether the claimant has a severe impairment;
(3) whether the impairment meets or is medically equivalent to one listed by the Secretary;
(4) whether the claimant is unable to perform his or her past work; and

4

> (5) whether the claimant is unable to perform any work in the national economy, based on his residual functional capacity.

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of 'not disabled.'" *Id.* at 1030 (citing 20 C.F.R. § 416.920(a)-(f)). "Once a finding is made that a claimant cannot return to prior work, the burden shifts to the Secretary to show other work the claimant can do." *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995) (citation omitted).

## IV. The ALJ's Decision

Applying the five-step analysis for DIB claims, the ALJ found at step one that Self had not engaged in substantial gainful activity since his alleged onset date. Doc. 7-3 at 20. At step two, the ALJ found that Self has "severe impairments" caused by obesity, degenerative disc disease, and degenerative joint disease. *Id.* (citing 20 CFR 404.1520(c) and 416.920(c)). At step three, the ALJ concluded that Self's impairments did not meet the severity level or medically equal the severity of one of the impairments listed in 20 CFR Pt. 404, Subpt. P, App. 1, § 1.04 for spinal disorders and § 1.02 for major dysfunction of a joint because the record did not reflect that Self is unable to ambulate effectively. *Id.* at 21-22. Next, the ALJ determined Self's residual functional capacity ("RFC") and found that Self can "perform light work" with limitations on postural maneuvers,

climbing, standing, dangerous machinery, and extreme temperatures. *Id.* at 22 (citing 20 CFR 404.1567(b) and 416.967(b)). Based on the RFC, and relying on the testimony of a vocational expert ("VE"), at step four, the ALJ found that Self could not return to his past relevant work. *Id.* at 24. The ALJ then proceeded to step five, where based on Self's RFC, age, prior work experience, and the VE's testimony, the ALJ concluded that Self is "capable of making a successful adjustment to other work that exists in significant numbers in the national economy," including work as a garment folder, bagger, and marker. *Id.* at 25. Therefore, the ALJ concluded that Self was not disabled from the alleged onset date through the date of her decision.

## V. Analysis

Self argues that the ALJ erred by (1) failing to properly evaluate Self's subjective complaints of pain and (2) issuing a RFC finding that was not supported by substantial evidence. Doc. 9 at 6, 10. For the reasons discussed below, specifically the ALJ's failure to properly explain *why* she discredited the medical opinions that allegedly supported Self's subjective pain testimony, the Secretary's decision is due to be reversed.

A. <u>Whether the ALJ erred by failing to properly evaluate Self's subjective complaints of pain</u>

A plaintiff alleging disability because of pain must meet additional criteria to prevail. Doc. 9 at 5-12. This three-part "pain standard"[1] requires (1) "evidence of an underlying medical condition," and either (2) "objective medical evidence that confirms the severity of the alleged pain arising from that condition" or (3) evidence that the "objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." *Holt v. Barnhart*, 921 F.2d 1221, 1223 (11th Cir. 1991). "If the ALJ discredits subjective testimony, he must articulate explicit and adequate reasons for doing so." *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002); *see also Marbury v. Sullivan,* 957 F.2d 837, 839–40 (11th Cir. 1992) ("After considering a claimant's complaints of pain, the ALJ may reject them as not creditable, and that determination will be reviewed for substantial evidence.").

At issue here is the ALJ's finding that although Self's impairments could reasonably cause knee and back pain, Self's statements "concerning the intensity, persistence, and limiting effects of these symptoms" are inconsistent with the "medical evidence and . . . record." Doc. 7-3 at 23. Self attacks this determination on four grounds, arguing that the ALJ improperly relied on (1) the nine-year "gap" in his treatment, (2) the noncompliance with the "routine and conservative" nature

---

[1] *See Hand v. Heckler*, 761 F.2d 1545, 1548 (11th Cir. 1985).

of his prescribed treatment, (3) the insufficient medical evidence, and (4) Self's doctor's decision not to recommend surgery or to seek treatment from a spine specialist. Doc. 9 at 6. The court addresses these contentions below.

1. Alleged Reliance on the "Gap in Treatment"

The ALJ has "an obligation to scrupulously and conscientiously probe into the reasons" for a treatment plan and may not make credibility determinations based on a "failure to seek additional medical treatment" without developing the record as to the reasons for that failure. *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1269 (11th Cir. 2015) (internal quotations omitted) (finding error where "in the absence of additional information regarding [petitioner's] financial ability to seek alternate treatment, the ALJ could not fairly assess the severity of [petitioner's] back pain and potential disability"). A review of the record here shows that the ALJ only briefly inquired about Self's physical therapy regimen, and failed to develop the record as to the reasons that Self's doctors did not recommend surgery. *See* doc. 7-3 at 41-47. Also, the ALJ made no reference to the multiple records that indicated Self failed to pursue treatment due to financial issues and a lack of insurance. Indeed, during the hearing, Self testified that he "had to wait on physical therapy" because his family "didn't have any type of insurance at the time." *Id.* at 41. Self's testimony is consistent with the record which shows that in June 2013, Nurse Practitioner Amanda Godsey of Family Care

First indicated that Self "has been out of his blood pressure medication . . . [and] does not have insurance and has not had lab work in a long time," doc. 7-8 at 46, and Self was unable to get "fasting labs . . . due to his financial situation." *Id.* at 47. Despite Self's testimony and the medical record, the ALJ only briefly noted during the hearing that Self had no insurance and then moved on to ask about Self's ability to attend his granddaughter's softball games. *Id*. The failure to fully probe this issue constitutes reversible error.

    2. Alleged Failure to Comply with Prescribed Treatment

Based on treatment notes from one of Self's treating physicians stating that Self was "not interested in weight loss, bracing, or injections," the ALJ found that Self was "not . . . entirely compliant" with his prescribed treatment. Doc. 7-9 at 8, 24. The record, which reflects that Self in fact tried bracing and injections, albeit without any relief, belies this conclusion. *See* doc. 7-9 at 5 ("[Self] states that arthroscopy did not alleviate his symptoms . . . [and his] orthopedic surgeon in the past recommended a knee replacement but he was not ready at that time.") and doc. 7-10 at 48 ("[Self] then had epidural injections and these did not help."). Self also expressed a willingness to do physical therapy and made "good" progress toward his goals. *Id*. at 12, 27. Similarly, the record contradicts the conclusion that Self was not interested in losing weight. Self's weight decreased from 292 pounds in January 2015 to 288 pounds in April 2016, *see* docs. 7-8 at 16; 7-10 at 2,

9

and at the hearing in May 2016, Self testified that he has lost weight by "eating a lot less than [he] did before" and currently weighed 284 pounds, *see* doc. 7-3 at 40. Indeed, the ALJ noted the evidence about the alleged weight loss and sought to confirm it during the hearing. However, based on the ALJ's failure to find the relevant documents, the ALJ never returned to the subject. *See id.* ("[W]hile I'm looking for [those documents], what are you doing with respect to your diabetes?"). On remand, the ALJ should revisit this issue to ascertain whether the evidence supports Self's contention about his weight loss. Also, because poverty may excuse Self's failure to comply with his doctors' orders and prescribed treatment, the ALJ must "conscientiously probe into the reasons" for that noncompliance. *Henry*, 802 F.3d at 1269; *see also Beegle v. Social Security Administration, Commissioner,* 482 F. App'x 483, 487 (11th Cir. 2012) ("[T]he ALJ must consider evidence showing that the claimant is unable to afford medical care before denying disability insurance benefits based upon the claimant's non-compliance with such care . . ."); *Dawkins v. Bowen*, 848 F.2d 1211, 1213 (11th Cir. 1988) (holding that "poverty excuses non-compliance" with prescribed medical treatment or the failure to seek treatment).

### 3. Alleged Insufficient Medical Evidence

The ALJ also found that Self's subjective complaints of pain were only "partially supported by the objective medical evidence of record." Doc. 7-3 at 23.

The ALJ reached this conclusion despite noting Self's "long history of medical treatment for knee degenerative joint disease," that Self experienced "pain, tenderness, crepitus, and diminished range of motion," and that Self had a "long history of lumbar degenerative disease." *Id*. at 23-25. Ultimately, based on the gaps in medical treatment, Self's alleged lack of full compliance with his treatment, and purported inconsistent medical record, the ALJ characterized Self's medical evidence as "relatively weak." *Id*.[2]

A review of the medical record shows, however, that despite partial compliance with the prescribed medical treatment, Self's longitudinal history of complaints and attempts at relief support his pain allegations. Indeed, Self consistently complained of pain: (1) Dr. Amanda Reed noted that Self had symptoms of back and joint pain, doc. 7-8 at 54; (2) Dr. Suzanne Oparil noted that Self complained of shortness of breath for several weeks and had swelling of his left shin that "may represent a mass," *id.* at 73-75; (3) Dr. Jeffery Long noted that Self experiences "shoulder pain, osteoarthritis, obesity," "shortness of breath while climbing stairs," "lumbar spine pain," and "chronic back pain and [a] bulging lumbar disc," doc. 7-10 at 8; (4) Dr. Michael Rodriguez noted that Self had "moderate multiple level discongent degenerative pain," doc. 7-8 at 78; (5) Dr.

---

[2] One error the ALJ cited occurred during a February 2015 visit with Dr. Jeffrey W. Long. Doc. 7-8 at 72. During the visit, Self "denied" having painful joints and weakness in his musculoskeletal but the ALJ noted that the word "denied" was "repeated [in] several different places" and might be a result of a "problem with the electronic medical records." Doc. 7-3 at 51.

Laura Kezar noted that Self "has been toughing the pain out, . . . had [four] episodes where he cannot even get out of bed, . . . [experiences] current pain radiates like an electric jolt down [his] right leg, . . . [and] "uses a cane to help ambulate," doc. 7-10 at 42-52; (6) Dr. Sara Gould noted that "standing exacerbates [Self's] pain," "rest is the only alleviating factor," and Self's "range of motion [in his knee] is diminished in flexion with pain," *id.* at 44; (7) PTA Courtney Pettus notes that Self only "feels better for a short while after [physical] therapy but the pain returns in a little while," doc. 7-9 at 26; and (8) PTA Julie Glasgow notes that Self had "poor body mechanics [and] moderate difficulty with bed mobility due to lack of core control," *id.* at 33. Because the ALJ did not fully explain why she failed to "give considerable weight to the treating [and examining] physician's opinion," she committed "reversible error."[3] *Wiggins v. Schweiker*, 679 F.2d 1387 (11th Cir. 1982); *see also MacGregor*, 786 F.2d at 1053 ("Where the Secretary has ignored or failed properly to refute a treating physician's testimony, we hold as a matter of law that he has accepted it as true.").

---

[3] "In assessing medical opinions, the ALJ must consider a number of factors in determining how much weight to give to each medical opinion, including: (1) whether the physician has examined the claimant; (2) the length, nature, and extent of the physician's relationship with the claimant; (3) the medical evidence and explanation supporting the physician's opinion; (4) how consistent the physician's opinion is with the record as a whole; and (5) the physician's specialization." *Kennedy v. Comm'r of Soc. Sec.*, No. 6:14-CV-1776-ORL-GJK, 2016 WL 633729, at *2 (M.D. Fla. Feb. 17, 2016) (citing 20 C.F.R. §§ 404.1527(c); 416.927(c)).

4. Alleged Failure to Recommend Surgery or Specialized Treatment

A review of the record shows that the ALJ improperly rejected the medical record in part because Self "was recommended only conservative physical therapy" and was "not offered any further surgical intervention or . . . referred to a spine specialist." Doc. 7-3 at 22. As an initial matter, the record indicates that Dr. Gould diagnosed Self with "bilateral degenerative joint disease," but did not recommend surgery due to Self's inability to lose sufficient weight rather than a belief that Self would not benefit from surgery. Doc. 7-3 at 24, 7-10 at 44. Also, although the record also does not detail why Self was not referred to a spine specialist, Self was referred to a cardiologist, orthopedic, and nephrologist, doc. 7-10 at 37, and in February 2016, Dr. Saurabh Gupta performed an MRI and noted Self's "chronic back pain" and "multilevel advanced degenerative changes of the lumbar spine with spinal canal and neural foramen narrowing," *id.* at 42-43. In light of the ALJ's failure to find that Self's treating physicians were incompetent or should be discredited, remand is warranted here so that the ALJ can articulate why the opinions of the medical providers are entitled to little or no weight. *See e.g., Lamb v. Bowen*, 847 F.2d 698, 703 (11th Cir. 1988) (The ALJ "may not arbitrarily substitute his own hunch or intuition for the diagnosis of a medical professional."); *Marbury,* 957 F.2d at 841 ("Although Social Security disability benefits must be

reserved only for those who qualify to receive them, an ALJ may not arrogate the power to act as both judge and physician.").

## **CONCLUSION**

Based on the foregoing, the court concludes that the ALJ failed to develop the record as to the reasons for discrediting Self's pain testimony and medical record. Consequently, it is unnecessary to review Self's second contention regarding the alleged error in the ALJ's RFC finding. *See Crow v. Colvin*, 36 F. Supp. 3d 1255, 1260 (N.D. Ala. 2014). Accordingly, the Commissioner's decision is due to be reversed and remanded for reconsideration consistent with this opinion. A separate order will be entered.

**DONE** the 7th day of January, 2019.

_____
**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE